Judge Graham
delivered the opinion of the Court.
Many years since a tract of land at the junction of the Ohio and Licking rivers, was laid off into streets and lots, and a plan or map of the town, which was called Newport, was made in 1792. Between this date and 1795, several lots were sold and conveyed to others by the proprietor, Taylor. In Dec. 1795, an act of the Legislature of this date, was passed, establishing the town of Newport, agreeably to a plat made by John Roberts, deputy surveyor of said county, on a re-survey of said town the 20th of August, 1795, and lodged in the office of Campbell county to be recorded.
Upon each map there is an open space between the lots and the rivers. Whether the purchasers of lots previous to the act aforesaid, had any assurance that this open space was to be considered a part of the town, there is no proof, except that which may.be inferred from the fact that the town was thus laid off immediately in front of a navigable river. It seems from the record before us that for many years past, perhaps even before the town was there, Taylor had a ferry from the site of Newport, to Cincinnati, and that he and his representatives, since his death, have uninterruptedly continued in the use and enjoyment'of the ferry privilege, ever since that time.
At their February term, 1850, the County Court of Campbell, granted to the President and Common Council of the city of Newport, a ferry across the Ohio to Cincinnati.
The heirs of Taylor, dec’d., appealed to the Circuit Court, and on the trial of the appeal the order of the *362 County Court was reversed. From that judgment the city of Newport have by appeal, brought the case to this Court for revision.
The right of the corporation of a town in a eontestwith the proprietor, having been once decided by the proper authorities on an applicationto establish a ferry, cannot be again question’d by the same corp’ration in a new application for the same object— the previous adjudication is a bar.
The decision of the controversy between these parties turns mainly, if not exclusively upon the question whether the act of the Legislature establishing the town of Newport, so vested the title to the ground in front of Newport on the river, in the town or the trustees* as to give them a right to have ferries established, or whether by that act, this franchise was retained by the proprietor, and has descended to his heirs. As already suggested, there is no proof of any thing that took place between the proprietor and the few' persons to whom previous to the passage of the act, he had sold and conveyed certain in and out lots. But if it may be presumed that the purchasers or grantees in the seven deeds exhibited, bought under the assurance that the open space was a part of the tow'n, there is not a particle of evidence that they have ever controverted the claim of Taylor or his heirs. Almost the entire population of Newport have become citizens and residents of the town since its establishment by the Legislature, and as they seem ever since to have recognized the act as valid, it must be presumed, that they have sanctioned, and acted under its several provisions, and under the several acts since passed amendatory of it.
It further appears from the records of this Court, that about the year 1830, the trustees of Newport made application for a ferry across the Ohio river to Cincinnati. Their application was refused by the County Court, and they appealed to this Court. At the June term, 1831, (see 6 J. J. M., 134,) this Court rendered an Opinion affirming the order of the County Court. It is not necessary to advert to that opinion further than to say, that the parties having w'aived the enquiry whether the public interest required the establishment of another ferry, the controversy turned exclusively on the question of right to ferry privileges, under the act establishing the town. This Court then decided that *363 the proprietor had not disposed of the fee in the land between the lots and the rivers, but had only disposed of the right of common therein, and had retained to himself all rights not inconsistent with the right of common, which had been granted, and that the act instead of divesting Taylor of ferry privileges, did in fact secure them to him.
From the evidence contained in the record before us, it seems clear that the public convenience requires the establishment of another ferry across the Ohio river. At the establishment of the town in 1795, it contained but very few inhabitants. . In 1830, its population was but a few hundred, but since that time it has grown so rapidly that it is proved now to have more than six thousand inhabitants, and that it is necessary for the public convenience that another ferry should be established. Although this be the state of case, yet we believe we are bound by the opinion of this Court rendered in another controversy between the town of Newport and Taylor, in 1831. The parties to this controversy are the successors and representatives of the parties in that suit, and if that decision would have precluded the town of Newport, it need hardly to be said, that it equally bars the city of Newport. Ordinarily, the failure of one application for a ferry, will not forbid another application by the same party. At one time, there may be no necessity for a ferry, and at a subsequent period the public good may imperiously require it. At one time the applicant may have no such interest in the land as to entitle him to such a privilege; but he may subsequently acquire such an interest. In these and all such cases, the order or judgment in one case will not prevent another application. But this case rs presented in a different aspect. Here, the city of Newport has precisely the same rights and interests which , the town of Newport had in 1830. No new or additional rights or interests have since accrued to the city. If the act of 1795, vested in Taylor the exclusive right to ferry privileges, nothing has since occurred, so far as *364 appeal’s from the record before us, to take it from him or his heirs. In the case of Morgan’s heirs against Parker; (1 Dana, 144,) it is said that the Court having by two' decisions settled the identity of an object called for in an entry, will in subsequent cases upon the same evidence adhere to the former decisions. This was said in a controversy not between the same parties. If that •be a sound principle as to the mere identity of an object, certainly it is much more conclusively applicable in a case involving the legal construction of a statute.
If a ferry shall not be sufficient to answer the purposes of public convenience, may not the County Court require the owner to increase the number of boats, hands, &c., to-meet the public exigencies — arg.
Benton Sf Kinkead, and Root for appellants; Stevenson and Harlan, for appellees.
We will not, however, extend these remarks. We are of opinion that we are not authorized to depart from the decision of 1831, in its exposition of that statute, even if we dissented from it, and adhering to that opinion, it follows that the Circuit Court did not err in its judgment.
The remedy for any inconvenience under which the city or public may labor, if any remedy they have, is to be had by legislative enactment, and not by judicial decision; or if the present ferry does not afford reasonable accommodation and convenience to the public, perhaps the County Court who have authority to direct ■what boat or boats and number of hands shall be kept at a ferry, may make the necessary orders on the subject.
Not perceiving any error in the judgment of the Circuit Court, it is therefore affirmed.